DONALD N. PATCH et al., Appellants, *v.* HAROLD S. WRIGHT, Individually and as Father and Natural Guardian of WILLIAM H. WRIGHT, an Infant, Respondent. (Action No. 1.)

HAROLD S. WRIGHT, Individually and as Father and Natural Guardian of WILLIAM H. WRIGHT, an Infant, Respondent, *v.* DONALD N. PATCH et al., Appellants. (Action No. 2.)

SEBASTIAN ABBADESSA, Individually and as Father and Natural Guardian of THOMAS J. ABBADESSA, an Infant, Appellant-Respondent, *v.* HAROLD S. WRIGHT, Individually and as Father and Natural Guardian of WILLIAM H. WRIGHT, an Infant, Respondent, and DONALD N. PATCH et al., Appellants. (Action No. 3.)

Third Department, January 5, 1970.

*Kramer, Wales, Robinson & Stearns* (*Conrad E. Stearns* of counsel), for Donald Patch and another, appellants.

*Hinman, Howard & Kattel* and *Knight, Keller & O'Connor* (*John M. Keeler* of counsel), for Harold Wright, respondent.

*Conte & Helisek* (*Frederick P. Conte* of counsel), for appellant-respondent.

HERLIHY, P. J.  These are appeals from: (1) a judgment of the Supreme Court, entered November 12, 1968, in Broome County, upon a verdict rendered at a Trial Term in favor of the plaintiffs and against the defendants Patch in Action No. 3; (2) a judgment, entered October 28, 1968, which dismissed the complaints against the defendants Wright in Actions Nos. 1 and 3; (3) an order, entered October 22, 1968, which granted the plaintiff's motion for a new trial in Action No. 2; (4) an order, entered October 25, 1968, which granted the plaintiffs' motion for a new trial in Action No. 3, unless the defendants Patch stipulated to an increased verdict; and (5) an order, entered October 25, 1968, which denied the motion of the plaintiffs in Action No. 1 for a new trial, and set aside the verdict against the defendants Wright in Action No. 3.

The automobile accident involved in this litigation occurred on November 5, 1966, at approximately 12:30 A.M. in the City of Binghamton, New York, at the traffic controlled intersection of Jarvis Street (north and south) and Clinton Street (east and west).  The night was clear, the roads dry and the streets generally level as they approached the intersection.  At the southwest corner there was an abutment and a pile of coal, but an examination of the exhibits in evidence clearly demonstrates that a vehicle on Jarvis Street going north (such as Wright), and a vehicle on Clinton Street going east (such as Patch) could observe approaching traffic in both directions, and this would be particularly so at nighttime when automobiles approaching the intersection would have their headlights lighted. It is a fair observation that at the point of contact both vehicles were about in the middle of the intersection and that the Wright vehicle, after the crash, was somewhat north of the northeast corner, tipped over, lying between the curb and the sidewalk. The Patch vehicle was in the westbound lane of Clinton Street and partly beyond the easterly edge of the intersection.

The drivers of both automobiles, Patch and Wright, were unable to describe or give any details concerning the collision due to a lapse of memory as a result of injuries sustained.  The plaintiff, Abbadessa, a passenger in the Wright automobile, as well as Saraceno, another passenger, testified to the events

leading to the collision, all of which were observed in a matter of a few feet and a few seconds. Their testimony as to what they observed regarding speed, distances, lighting conditions and other factors was clearly an issue for the jury to appraise and evaluate.

Russell Rhodes testified he was traveling in the same direction some distance to the rear of the Patch automobile, and he could not say whether the traffic control light was red or green in Patch's favor at the moment of collision. While Abbadessa and Saraceno testified that, seconds before the collision, it was green in Wright's favor, the traffic control record, introduced in evidence, showed that for a brief interval it could have been red against both drivers. A police officer gave measurements taken at the scene with the help of Rhodes, and the other witnesses produced either were unable to testify as to the circumstances surrounding the collision or the testimony was repetitious.

A young woman named Korbar testified that she arrived at the hospital, where the accident victims were taken shortly after the accident, and that she heard some boy in the emergency room yelling '' that he went through the red light, that it was his fault, not the other guy's, and he wanted to know how many people that he had killed ''. She stated the voice did not sound like Patch but was unable to give any further identification. The police officer who was at the scene and the hospital testified he heard Wright screaming and asking whether any one had been killed. Wright's father and the three passengers in Wright's car also testified that they heard Wright making similar outbursts. There was testimony that no other person in the emergency room was yelling and screaming. The doctor attending Wright testified that when he arrived at the hospital his patient was hysterical and confused but that he suffered no head or brain damage. It was established beyond doubt that Wright was the person yelling and screaming. Thus, whether he stated he went through a red light was an issue for the jury to decide.

The court, in charging the jury as to this aspect of the case, informed them that the difficulty with Miss Korbar not being able to identify the voice that was screaming was for them to consider in weighing the testimony as to whether Wright was screaming. He also stated that they must consider Wright's mental condition — whether he was in shock, hysteria or amnesia — in determining whether to place any reliance upon what was said at the hospital. The jury was instructed that if Wright

was suffering from shock, hysteria or amnesia he would not be responsible for what he said.

In the posture of the actions in this court, the proof must be viewed in the light most favorable to the jury verdict. The trial court, in setting aside the verdict as to Wright stated: " This Court is of the opinion that *as a matter of law* there was no credible evidence in the case warranting a finding of negligence against the defendant William Wright." Under the circumstances we are unable to agree with the trial court's finding that as a matter of law there was no credible evidence to sustain a finding of negligence against the defendant Wright. While motions were made to set aside the verdicts as contrary to the weight of the evidence, this was not the basis for the court's decision. As the court recognized in its charge, whether there was credible or believable evidence of negligence was for the jury to decide, and on this record we cannot say that its finding was erroneous as a matter of law (*Rapant* v. *Ogsbury,* 279 App. Div. 298, 301; cf. *Mann* v. *Hunt,* 283 App. Div. 140).

Based on the evidence at trial, the jury could have found, considering the conflicting testimony of the eyewitnesses, the fact that the traffic signal could have been red both ways at the same time, and the testimony relative to Wright's statements at the hospital, that Wright entered the intersection on a red light. Or, even if it believed that Wright entered the intersection on a green light, it could have found him to be negligent. For, as was said in *Shea* v. *Judson* (283 N. Y. 393, 398): " Under all the circumstances of the case, it was for the jury to determine whether he exercised such care as was required of an ordinarily prudent man, though having in mind the fact that the lights gave him the right of way ".

In Action No. 1, the judgment in favor of defendants Wright and order which denied plaintiffs' motion to set aside the verdict should be affirmed, with costs. In Action No. 2, the order which granted plaintiffs' motion to set aside the verdict should be reversed, on the law and the facts, with costs; motion denied, and verdict reinstated. In Action No. 3, the order which granted the motion by defendants Wright to set aside the verdict and to dismiss the complaint as to them should be reversed, on the law and the facts, without costs; motion denied, and verdict reinstated. Order which granted plaintiffs' motion in Action No. 3 to set aside the verdict and to direct a new trial should be modified, on the law and the facts, so as to provide that the verdict be set aside, and a new trial, limited to the issue of damages to the infant plaintiff, ordered, with costs to plaintiff

to abide the event; unless defendants Wright and Patch, within 30 days after service of the order to be entered hereon, shall stipulate to increase the verdict in favor of such plaintiff to $2,500, in which event judgment shall be entered in favor of the infant plaintiff for $2,500 and in favor of the plaintiff parent in the amount of $252, with costs, and order, as so modified, affirmed, with costs in this court to appellants.

STALEY, JR., GREENBLOTT, COOKE and SWEENEY, JJ., concur.

In Action No. 1, judgment in favor of defendants Wright and order which denied plaintiffs' motion to set aside the verdict affirmed, with costs. In Action No. 2, order which granted plaintiffs' motion to set aside the verdict reversed, on the law and the facts, with costs; motion denied, and verdict reinstated. In Action No. 3, order which granted the motion by defendants Wright to set aside the verdict and to dismiss the complaint as to them reversed, on the law and the facts, without costs; motion denied, and verdict reinstated. Order which granted plaintiffs' motion in Action No. 3 to set aside the verdict and to direct a new trial modified, on the law and the facts, so as to provide that the verdict be set aside, and a new trial, limited to the issue of damages to the infant plaintiff, ordered, with costs to plaintiff to abide the event; unless defendants Wright and Patch, within 30 days after service of the order to be entered hereon, shall stipulate to increase the verdict in favor of such plaintiff to $2,500, in which event judgment shall be entered in favor of the infant plaintiff for $2,500 and in favor of the plaintiff parent in the amount of $252, with costs, and order, as so modified, affirmed, with costs in this court to appellants.